...T J. ALEXANDER III
71  AYC·552
5 Broder blud.
...in, CA. 94568
PRO·PER

EMERGENCY ▮▮▮ RESPONSE
Ethical civil ACTION Review

MMC
550

**MMC**

CV  08        2727 **(PR)**

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF
# CALIFORNIA SAN FRANCISCO VENUE

re

NO. _____

...RT J. ALEXANDER III
...intiff:

PETITION FOR INJUNCTIVE
RELIEF AND MONETARY DAMAGES
42 U.S.C. CIVIL RIGHTS ACTION
UNDER 42 U.S.C. §§ 1983 PURSUANT
TO 42 U.S.C. §§ 1997c. procedures
AS AN ACTION; AS WELL AS A
P.C. §832.5 citizens complaint; gov code ethics
Federal Class Action Civil Suit    Violation

...vs.
...fendant:

...fornia Prison Advocacy Project;
...: The State of California Prison Authority; Attorney MARK DEMMING (226831)
of Parole Hearings / CDCR inc; A.C.D.C.,    SSN#
...he Governor of the State of California, Chief Inmate Appeal Coordinator et al.

...a Robert Joseph Alexander III: I am the Plaintiff in this action.

... filing an civil suit action under the 42 U.S.C. §§ 1983

...il rights act. In accordance with 42 U.S.C. §§ 1997c.

...is civil complaint by a Prisoner / Parolee revoked status,

...s specific legal direction toward challenging the

...ederal Constitutional & Statutory and un-Statutory legally

...nlawful Violations by State actors named in this

...mplaint as Defendant; which affect my condition of

CALIFORNIA DEPT. OF CORRECTIONS PAROLE OPERATIONS - DOM - Chptr. 8 -
ADULT PAROLE OPERATIONS ARTICLE 3 - ARREST AND PAROLE HOLD

81030.1 Policy; A Parolee shall be arrested and a P.C. 3056 parole hold placed
when there is reasonable cause to believe a parolee has
violated the conditions of Parole.

A Parolee will not be arrested either as punishment or
as a means of installing fear.

Physical restraint may only be used on an inmate or parolee
to make an arrest, prevent an escape or prevent injury to person
or damage to property.

A Parole Agent is not expected to attempt an arrest that
cannot be successfully and safely executed. The Parole Agent
shall make a recommendation to the unit supervisor within one
working day of placement of hold or learning that a hold has been
placed to retain or release hold.

The Power of the Parole Authority to fix prison terms is limited to
prisoners sentenced under the indeterminate sentencing law.

Fifth Amendment due process requires that the parolee be accorded
certain guarantees, including the right to a hearing. The parolee must
have an informal fact finding hearing in the nature of a preliminary
hearing, to determine whether the conditions of parole have in fact
been violated. Due process is satisfied if refixing of term at maximum
is subsequently considered at full revocation hearing. A parolee may be detained
on one ground but have his or her parole revoked on another. However the facts
underlying the revocation must, however, be determined at a preliminary
hearing followed by a full revocation hearing. These facts must constitute
good cause for revocation; a mere suspicion of complicity in the commission
of another offense is not sufficient. A prisoner is not required to accept
any condition imposed on parole. Especially if that condition is in violation
of or infringes on the respected private realm of family in which the State
cannot enter. In determining whether to make order, "Parole Authority" not DAPO
Parole Agent's, must consider facts of offense and background of parolee.
No decision shall be based upon information that is not available to the prisoner
unless the information has been designated confidential under the rules of the
department and is necessary to the decision. The "Parole Authority" BPH, may
consider and act on a parolees voluntary statement or confession made without
out the parolee first being apprised of his or her Miranda rights. However, at
the trial on the offense constituting the parole violation, evidence seized
in violation of the Parolee's constitutional rights will not be admissable.
At all hearings, prisoner's located in California shall have the rights enumer-
ated in §§ 2245 through 2255. Prisoners located outside California shall have
the rights specified in 2367. The prisoner is responsible for bringing to the
attention of the hearing panel any issues pertaining to his rights under this
article or any failure to comply with these rules. A prisoner shall have the
right to present relevant documents to the hearing panel. They may cover
any relevant matters. Such as mitigating circumstances, disputed facts of
release planing. The "Parole Authority" reviews a prisoner's request for reconsidera-
of denial of good-time credit, the setting of the length or conditions of parole, and
the suspension or revocation of parole. Parole is a period of conditional liberty
granted in order to facilitate the prisoners rehabilitation. To hold that the
Due Process clause confers a circumscribed right on the inmate, and then
conclude that no explanation need ever be vouched for the right being denied
would therefore change an admittedly circumscribed right into a private
conferred in the unreviewable discretion of the parole Agent, and or the "Parole
Authority" BPH. I think the U.S. courts decidings in Wolff, Supra, meant something
more than that. A parolee has a liberty interest in parole when it is mandated
by statute on certain conditions, and is entitled to a review of that decision.
Procedures used when

...e Process Clause of the 14th Amendment of the U.S. Constitution lies to parole revocation proceedings, (California parole Advocacy project / pro. Permanent injunction); ole Authority; B.P.H. Actions include parole revocation decisions, nial of parole suitability for life prisoners, or parole conditions :+ by BPT: "Parole Authority". CDCR is responsible for some other aspects + parole, including determining location of parole and most basic parole onditions, and such actions should be appealed using 602 inmate appeal rocess. However, a prisoner or parolee who is challenging an action of -he BPH: "Parole Authority" does not generally need to exhaust administrat remedies; AS OF MAY 2004, the BPH: "PAROLE Authority", does not have any general Administrative APPEAL PROCESS!!!.

"The doctrine of exhaustion of Administrative remedies has not hardened into inflexable dogma.. Thus, in an exceptional case, such as where the administra tive remedy is inadequate... PURSUIT OF THE REMEDY would be FUTILE; OR delay would result in irreparable injury. A court has discretion to hear the case without requiring exhaustion of Administrative remedies. Ultimately. the requirement of exhausting Administrative remedies should not apply when Injustice Might otherwise Result."

Parole Authority', can not revoke parole or extend a revocation without cause; It may be revoked for Violation of a condition of parole or for a commission of a crime, even if the offense precede the granting of parole. The BPH; Parole Authority, Administrative board is responsible for setting parole dates establishing parole length and conditions. People who are subject to their jurisdiction, void of any general Administrative Appeal Process are Adult felons Commited by Superior Courts to the Director James Tilton, now it is, as of May 16th 2008, Matthew Cate, former Inspector General. under the California Penal Code §§ 1168 and 1170. A parole condition (felon), is a specific condition regarding behavior required or prohibited during parole. Conduct by a parolee that violates the conditions of parole set forth by the 'Parole Authority' is defined for a Violation of Parole. Now a Parole Agent is not BPH/BPT, "Parole Authority". A Parole Agent's Peace officer status extends to enforcement of the condition of Parole. And to any violation of law that arises or is discovered in the course of employment. A parole Agent shall not preempt any other law enforcement agency in enforcing the law. Any Parole Agent employed by CDC is a peace officer pursuant to the provisions of P.C. 830.5 They tend to place parole HOLDS on a parolees parole status once the parolee is in Violation. A Parole Agent can not preempt the law by executing his or her own Revocation extension Assesment offer, by using coercion, or installing fear by using threat of Revocation to manipulate a parolee who does not have a attorney present, and circumvent the governing procedure set forth by the protection of Due Process. Niether is a Parole Agent or Unit Supervisor allowed by law to turn or manipul an unlawful arrest into a Parole Revocation Extension hearing by way of Valdivia v. Schwarzenegger for a (REA) Revocation Extension Assesment (Screening offer), or a Revocat hearing provided by Morrisey v. Brewer called Morrisey hearing or Revocation hearing. All in a fraudulent dizzying way. All to make any parole sign an preemptive Ammendment to a parolee's Special conditions of Parole, that wasn't established by the "Parole Authority". Especially when a Parolee hold shall be maintained only when it is determined that the parolee's release from custody will prove a serious risk to the safety of others, the safety of the parolee, the security of proper or when it is likely the parolee will abscound". How can a Parole Agent there fo arrest, place a hold and have a Revocation Extension Assesment and hearing prior to the "Parole Authority establishing any new condition"? To place a ho and arrest is direct proof of violation of Due Process, described further in the parolee's right to be provided...

## THE FAILURE OF CALIFORNIA PRISONERS ADVOCACY PROJECT & PROGRAM To Provide

Legal Representation Adequate & Sufficint to satisfy Constitutional Due Access Standards, Adhere to Attorney Client Privelege & Confidentiality mandated by CODE OF ETHICS, by arbitrarily & Preemtively Communicating fraudulent Memorandums to my legal opponents; under the guise of My Approving Foreknowlege. Violated my protected Rightto a fair hearing protected by The Title 15, CAL. Admin. Code Sections 3315 (d) And 3318 (b) And penal Codes §§ 832.5, 118 c. 43, False report of memorandum, Gov. & this code violation, misconduct Working in unethical unison with California Parole Authority. Further Violating My Due Process Rights Clauses of the State & Federal

### CONSTITUTIONS

### PRAYER FOR RELEIF

Petitioner is without remedy.

WHEREFORE, petitioner prays the Court:

1) Grant relief the Court decms proper.

2) Appoint Counsel award reasonable attorney fees.

3) Declare the rights of the parties

4) Review The Exhibits being Submitted in Petition

5) Issue a class actions Complaint in regards to the prisoners, parolees, and taxpayers abroad, in the State of California, and monetary damages

### VERIFICATION

P07071, AYC.552

I, ROBERT J. ALEXANDER III, state:

I am the petitioner in this action. I have read the foregoin Petition for Writ of habeas corpus and the facts stated

TABLE OF AUTHORITIES

INCE V. Massachusetts, 321 U.S. 158, 166 (1944);

decisions have respected the private realm of family life which the State cannot enter. (an opinion of the United States Supreme Court.)

nal Code § 2932 (a); See In re Ballard (1981) 115 Cal. App. 3d 647, 650, 171 Cal. Rptr. 459

⟨when misapplication of presentence conduct credits delay Parole release date, credits must be used to reduce parole period⟩

orrisey v. Brewer (1972) 408 U.S. 471, 477, 92 S.Ct. 2593, 33 L.Ed. 2d 484; People v. Denne (1956) 141 Cal. App.
        Roberts v. Duffy (1914) 167 Cal. 629, 634, 140 P.260        444, 507-508, 297 P.2d 451; P.C. 3137

nal Code § 3053 (a)

nal Code §§ 3000 (b)(6), 5077,   Board of Pardons v. Allen (1987) 482 U.S. 369, 374-380, 107 S.Ct. 2415, 96 L.Ed.2d 303

nal Code § 3053.4   Young v. Harper (1997) 520 U.S. 143, 1775 S.Ct. 1148, 137 L.Ed.2d 270 (inmate released
                    under States "Pre Parole" Program Similar to liberty in Parole,
nal Code §§ 422.55, 422.6, 422.7, 422.75, 594.3, 11411.   is entitled to Procedural Protections of Morrissey v. Brew

nal Code § 3053.6 (a) ⟨in determining whether to make order, parole authority must cons, facts of offense and background of parolee⟩

nal Code §§ 2962, 2966 (c), 2970, 2972 (c),(c), 2980; See also Stats. 1989, ch. 228, § 8 ⟨act, adding requirem
  . proof of dangerousness and changing applicability of act to those persons committing crimes
  . after Jan 1, 1986 in light of People v. Gibson, is urgency Statute necessary to keep treatment
  rogram in effect for those persons who committed their crimes on or after Jan 1, 1986⟩
ople v. Robinson (1998) 63 Cal. App. 4th 348, 74 Cal. Rptr. 2d 52 ⟨MDO Law is a civil scheme, and its
  position to prisoners whose offenses were admitted before July 1989 does not violate ex post fac
  ws) supporting Myers conclusion in light of subsequent decision in;
mSaS v. Hendricks (1997) 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501);
ople v. Superior Court (Myers) (1996) 50 Cal. App. 4th 826, 58 Cal. Rptr. 2d 3 ⟨MDO Law may be
  plied to Paroled Prisoners whose Predicate crimes were committed before July 27, 1989, when
  gency legislation was passed and became effective to cure constitutional defects in law fou
  Gibson; urgency legislation added in needed proof of present dangerousness requiremen
  ther, Gibson was decided under former ex post facto law that has since changed in interp
  rion, and under new interpretation, Moo law is not subject to ex post facto analysis); see
ople v. Gibson (1988) 204 Cal. App. 3d 1425, 1430, 143-1441, 252 Cal. Rptr. 460 ⟨former versions of
nal Code §§ 2962-2980 violated equal protection, because they differed significantly
  om other commitment schemes by mandating commitment without proof of present,
  ngerousness; retroactive application of former versions of statutes also violated ex post f

nal Code § 3041.5 (b)(2);
  re Sturm (1974) 11 Cal. 3d. 258, 272-273, 113 Cal. Rptr. 361, 521 P.2d 97 ⟨due process violated when der
  Parole were discussed in post hearing interviews with Counselor, but prisoner did no
  en real reason for denial until he retained Counsil⟩

nal Code § 1168, 1170, 1170.2, 3000 (b)(6), (2);
  re Chabliss (1981) 119 Cal. App. 3d 199, 201-203, 173 Cal. Rptr. 712 ⟨Prisoner was not entitled
  ase without parole simply because court failed to advise him of possibility of parole
  tencing⟩; In re Bray (1979) 97 Cal. App. 3d 506, 513-514, 158 Cal. Rptr. 745 ⟨retroactive
  application of Penal Code § 3000 to parolee, increasing term, violates prohibition on
  ex post facto laws⟩ § 667.5 (c) (3), (4), (5), (6), (16), (18); § 3000 (b)(1)
nal Code § 667.5 (c)(3)(4),(5),(6),(11),(14),   Penal code § 3000 (b)(1),(2).

le § 104.04 Procedure;
  inimum Time to be Served before Parole; A person sentenced under Penal Code Section 1168;
  ndeterminate sentencing law, or under Penal Code Section 1170 ⟨determinate Sentencing⟩
  ust be placed on parole, unless the Parole Authority waives this right and dischar
  ie Prisoner. [§ 104.02] Parole Administration. The P_ _ _ _ _ _

Mark Demming, Attorney at Law
5414 Miles Avenue, Oakland, CA 94618
Telephone/fax: (510) 655-7690
Email: markdemm@yahoo.com

May 23, 2008

Robert Alexander
AYC 552, Santa Rita Jail
5325 Broder Boulevard
Dublin, CA 94568

## HAND DELIVERED

Dear Mr. Alexander:

California Parole Advocacy Program appoints legal representation to assist parolees in handling their parole violation charges. When the charges or screening offer are contested at a revocation hearing, attorney representation ends at the conclusion of that hearing.

As you know, I was appointed to provide you with legal representation in the most recent charges brought against you, those that were heard at your April 29, 2008, revocation hearing. Following that hearing, after any obligation to provide you with assistance had ended, I told you that the "good cause" findings made by the hearing officer were not, in my opinion, legally justifiable. You asked whether you should hire an appellate attorney. I said that you could do so, but that I – as an alternative to you hiring a lawyer – would provide *pro bono* assistance with getting the decisions reviewed, first with an informal request for review by the Board of Parole Hearings, and, if that did not bring the desired result, then with a writ of habeas corpus to the Superior Court. I explained that a review by the BPH would be faster than a writ, and less work for me.

You agreed to my offer, and to proceeding first with an informal request for review. You neither retained me, nor did we sign any agreement regarding this assistance. I asked you to sign a form allowing me to request the tape of the hearing, and a general authorization for release of confidential records that might have been needed if it proved necessary to draft and file a writ and if you were moved to another location.

When you requested that I go to Superior Court to get a copy of a writ you said you had previously filed regarding, to my understanding, an earlier court case – outside the scope even of the purely voluntary legal assistance I had offered – I said I could probably do so, but I made no definite commitment regarding when.

On May 7, 2008, I completed a six-page legal memorandum requesting that the decisions

made in your revocation hearing be reviewed according to an informal process that had been in place between CalPAP and the Board of Parole Hearings. I brought you a copy of that . memorandum the following day, I believe, on May 8. You raised absolutely no objection at that time. I asked you to read through it for the accuracy of the facts I had presented, in case a writ were to become necessary. At that meeting, you requested BPH and CDC documents in order to complete your record of previous revocation hearings. I sent you these documents by mail on May 12, 2008. In the cover letter I repeated the request for comments on the memorandum. I wrote: "I've also enclosed two stamped, self-addressed envelopes in case the decision review does not result in your release and we have to file a writ. In that case, I would want your comments and corrections on the Memorandum I sent to the A.C.D.C. (the supervisor of the hearing officer)."

Then, I visited you once again earlier this week, on May 20. You said nothing about the memorandum. You renewed your request that I get a copy of your habeas petition from the Superior Court, and seemed upset that I had not already done so. More importantly, you said nothing about proceeding to file a habeas petition on your own regarding the April 29 hearing.

Yesterday, I went to the Superior Court in Oakland to find a copy of the writ you had requested. I saw there was only one active case, a writ that will be considered by the court on May 27, at 3:00 p.m, in Department 9. Assuming this was the writ you had requested, I had a copy made, though the assistant said a copy had been sent to you. I told her you had not received a copy. I did not realize this was a separate, new writ of habeas corpus, file stamped on May 22, 2008 – that is, written and maybe sent by the last time I visited you – until I arrived home. The memorandum I had sent to the Board was attached to the petition you filed, whether to provide the support of legal authority, or to support the complaints you raise against me in your writing, I can't tell.

Your silence on the fact that you were in the process of filing a writ on your own the last time we spoke shows sufficient lack of confidence in the assistance I offered that I am compelled to withdraw that offer. That lack of confidence was expressed directly by the false allegations made against me in your writ. On just this one point: At no time, until now, did I withdraw my offer to draft and file a writ for you on the April 29 hearing.

As for the court hearing on your writ on May 27th, of which I learned only yesterday when I went to court, my advice is that you either obtain other representation, or, considering the extremely short notice, allow me to represent you, for that hearing only, to do the following: appeal to the court to continue (postpone) the hearing until you can get a lawyer of your choosing; or, consider the petition now on the legal issues, and look past the faults in the form and presentation of the writ; or, if it appears the judge is inclined to deny the writ, appeal to him to allow the writ to be withdrawn for now and re-submitted later after the petitioner has retained another lawyer to assist him. You would have to write a note to the court to say that I am appearing at that hearing only as your legal representative. I make this offer, despite my experience to this point with your abuse of my offer to help you, only because you've put

2

yourself and your legal claims in a most disadvantageous position, and I feel ethically bound to do what I can to prevent you from doing additional harm to yourself until you can find other legal assistance.

On the issue of the request for decision review, I just received a letter from the BPH refusing to review the decision on the grounds that it arrived too late and did not conform to certain formal requirements, conditions that did not exist before. The BPH is trying, unilaterally and without prior notice, to initiate a new policy reqarding these requests. CalPAP is opposing this effort, and I will continue to get the decision reviewed and reversed, unless you tell me to make no further efforts with the BPH.

Along with this letter, I am handing over to you the file-stamped copy of your May 22, 2008, writ which I obtained for you from the court, and the tape of the April 29 BPH hearing which I requested on your behalf.

Sincerely,

Mark Demming

3

Mark Demming, Attorney at Law
5414 Miles Avenue, Oakland, CA  94618
Telephone/fax: (510) 655-7690
Email: markdemm@yahoo.com

May 12, 2008

Robert Alexander, a.k.a. Robert Samuels
PFN: AYC 552
Santa Rita Jail
5325 Broder Blvd.
Dublin, CA  94568

Dear Mr. Alexander:

Please find enclosed the CDC 1502(b)s, along with the corresponding CDC 1521(b)s, which you requested. Is anything missing?

Also I've enclosed two stamped, self-addressed envelopes in case the decision review does not result in your release and we have to file a writ. In that case, I would want your comments and corrections on the Memorandum I sent to the A.C.D.C. (the supervisor of the hearing officer). I hope that by the end of the week we will have some news about that, if nothing more than an acknowledgment that it was received and is being considered. I will keep you informed.

With best greetings,

Mark Demming

Mark Demming, Attorney at Law
5414 Miles Avenue, Oakland, CA 94618
Telephone/fax: (510) 655-7690
Email: markdemm@yahoo.com

## FACSIMILE COVER SHEET

TO:        **Board of Parole Hearings, Attn: Danny Davis**
FAX NO.:   **916-324-1987**
FROM:      **Mark Demming**
DATE:      **May 1, 2008**

RE:        **Request for Copy of Parole Revocation Hearing Tape**

**Dear Mr. Davis,**

**Can you please send a copy of the following tape to me at the address above? I was the defense attorney at this hearing. Both Mr. Alexander and I are signing the request.**

**ALEXANDER, Robert  P-07071**
**Hearing: 4/29/08 at Alameda County Jail (Santa Rita)**

**Thanks!**

Mark Demming                          Robert Alexander

The attached document contains confidential information belonging to the sender which is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this telecopy in error, please immediately notify this office by telephone to arrange for the return of the original documents

R. J. ALEXANDER III
2071  PFN#AYC·552
3roder blud.
, CA. 94568
> Persona

EMERGENT RESPONSE

F I L E D
ALAMEDA COUNTY
APR 2 4 2008
CLERK ~~~~~ SUPERIOR COURT
By ~~~~~
Deputy

# SUPERIOR COURT OF THE
# STATE OF CALIFORNIA
# COUNTY OF ALAMEDA

| | |
| --- | --- |
| re<br><br>T J. ALEXANDER III<br><br>peas Corpurs | NO. _H 25646_<br><br>PETITION FOR WRIT<br>OF HABEAS CORPUS AND<br>MEMORANDOM OF POINTS<br>AND AUTHORITIES<br>IN SUPPORT THEREOF |

etitioner has been unlawfully detained by the said
tate of California, Department of Corrections inc.
e actions being unlawful, Non Authorized by The universal
verning laws, The Constitution therein, United States of the
nerica, State of California constitution. In support of Enemy Combatants
rare 'in fact rengade agent provacature's acting outside goverment said
thority. By acts of Entrapment, False imprisoment, False reports, even to
sifying gov. documents, to fraudulent Embezelment. In re. Operating in this
land as a Seperate clandestine entity. By wich they Aquired 33 Prisons
which are unlawful holding facilities, without an adequate System,
viding. Compromised, falable, Self described, un-balanced procedural relief.

RECEIVED
APR 24 2008
BY

## II

obert Joseph Alexander III, am being held captive at what is said to be Contracted
Dublin Parolee Violater housing unit 3 E-9, at Santa Rita County Jail, 1535 Broder blud, Dublin
ornia 6666 Amador plaza dr, State holding facility. Aherm is the Chief Deputy Sheriff and
den by contract, State of California Prison Director of Depart ment of Corrections inc. is James Tilton
ector General of cdc is Matthew Cate, California Dep't of corrections Peace officers Associate s
it I find the political Caesing of the Governor of California Arnold Schwarzenegar. D. Sen.
e Machado. PETITIONER (ROBERT JOSEPH ALEXANDER III CDC#P07071) is a unlawful detainee
ner of a Protracted People's War. Being held captive indefinately by the STATE OF CALIFORNIA.
Governor is Arnold Swharzenegar. Thus citizenship was not Relevent in his

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**     Dept. No. 9

Date: May 6, 2008          Hon. LARRY GOODMAN, Judge          Fil R. Cruz, Dep.Clk.
                                                              Not Reported, Reporter

---

IN RE: ROBERT ALEXANDER
Aka: ROBERT SAMUEL                    Counsel appearing: No Appearance
                  Petitioner         for Petitioner

vs.                                   Counsel appearing:   No Appearance
                                      for Respondent
PEOPLE OF THE STATE OF CALIFORNIA

                  Respondent

---

Nature of Proceedings:  ORDER FOR INFORMAL BRIEFING ON PETITION FOR WRIT OF
                        HABEAS CORPUS

                                      Case: H25646
                                      PFN:   AYC552
                                      CEN:  8248203

The Court having reviewed the Petitioner's Petition for Writ of Habeas Corpus filed April 24, 2008, HOW HEREBY
ORDERS:

Please find enclosed a copy of Judge Goodman's Order For Informal Briefing on Petition For Writ of Habeas
Corpus signed and filed May 6, 2008.

                  <u>CLERK'S CERTIFICATE OF MAILING (CCP 1013a)</u>
I certify that the following is true and correct:  I am a Deputy Clerk employed by the Alameda County Superior
Court. I am over the age of 18 years. My business address is 1225 Fallon Street, Oakland, California. I served this,
ORDER FOR INFORMAL BRIEFING ON PETITION FOR WRIT OF HABEAS CORPUS by placing a copy in an
envelope addressed as shown below and then by sealing and placing it for collection, stamping or metering with
prepaid postage, and mailing on the date stated below, in the United States mail at Oakland, California, following
standard court practices.


Robert J. Alexander III                          State of California
CDC #P07071 –PFN#AYC552                           Department of Justice
5325 Broder Blvd.                                 Office of the Attorney General
Dublin, CA 94568                                  455 Golden Gate Avenue
                                                  S.F. CA 94102-7004
                                                  <u>Attn:  Sally Stevens</u>
                                                  Correctional Law Center

Dated: May 6, 2008
Clerk of the Superior Court


By: _____
Fil R. Cruz, Deputy Clerk

Enclosed: as stated above; also copy of Petition for Writ of Habeas Corpus is also enclosed for the Attorney
General


(Rev. 5/3/07)

ENDORSED
FILED
ALAMEDA COUNTY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA** MAY 0 6 2008
**COUNTY OF ALAMEDA**

CLERK OF THE SUPERIOR COURT
By _____FIL R. CRUZ_____
Deputy

IN RE

ROBERT J. ALEXANDER,

on Habeas Corpus.

No. H25646

ORDER FOR INFORMAL
BRIEFING ON PETITION FOR
WRIT OF HABEAS CORPUS

This court having reviewed the petition for writ of habeas corpus ("the Petition") filed by ROBERT J. ALEXANDER ("Petitioner") on April 24, 2008, **NOW HEREBY ORDERS:**

The Attorney General for the State of California ("Attorney General") shall file, in Department 9 of the Rene C. Davidson Superior Court, and serve an informal response to the Petition within fifteen days of the date of service of this order. The Attorney General may attach evidence to its informal response.

Petitioner may file an informal reply to the informal response within fifteen days from the date of service of the informal response on the Petitioner.

Pursuant to Code Civ. Proc., §1013, subd. (a), the time for service of the informal response and informal reply shall be extended by five calendar days.

The court notes that Petitioner did not serve the Attorney General with a copy of the Petition. Therefore, the Clerk shall serve on the Attorney General a copy of the Petition, along with this order.

DATED: __MAY 0 6 2008__

LARRY J. GOODMAN

_____
HON. LARRY GOODMAN
JUDGE OF THE SUPERIOR COURT

ENDORSED
FILED
ALAMEDA COUNTY

MAY 2 2 2008

CLERK OF THE SUPERIOR COURT
By _____

Pro Per /Co-Counsil

# SUPERIOR COURT OF THE
# STATE OF CALIFORNIA
# COUNTY OF ALAMEDA

re
RT J. ALEXANDER III
Habeas Corpus

NO. _____

PETITION FOR WRIT
OF HABEAS CORPUS &
MEMORANDUM OF POINT
AND AUTHORITIES
IN SUPPORT THEREOF

Petitioner: Robert J. Alexander believes legally along with his
-Counsil Mark Demming (SBN 226831) that the BPH Panel
-uty commissioner made clear errors of law in his revocation findings
itioner: respectfully requests that the Court Review
-tition; in memorandum Request for Decision Review in
a CDCR Parolee Revocation Hearing Dated April 29th, 2008, on
-trolling case number #H25676 that was ordered for informal
-efing on a Seperate Petition for WRIT OF HABEAS CORPUS on May 6,2008
-:9 Hon. LARRY GOODMAN, Judge. Petition was recieved and filed
the Clerck of Alameda County Superior Court on April 24,2008
H Deputy Commissioner James Marttin; acknowledged to pending Court
-iew on the record. Proceeded with a hearing of Partiality being
-r described as unfair, attached and biased; Hearing is on record 4-29-08
-th this Memorandum the petitioner: Robert Joseph Alexander III, request the
-ts Formal review and issue a Order to Show Cause in petitioner's revocation
-ring resulting in a good cause finding in two Parole Violation Charges out of three
-ght against him at a Revocation hearing at Alameda Sheriff's office Detention & Corrections Division.
-gory J. Ahern, is the Sheriff and Warden by State CDCR contract.
-retary of Corrections for the State of California is James Tilton
-ector General is Matthew Cate, CCPOA Funds Politically direct the Governor: Arnold Schwarzenegger.

RECEIVED
MAY 20 2008
By _____

On 4-24-08, Petitioner filed a Petition for Writ of Habeas Corpus, in the Alameda County Superior Court of California. The controlling case number #425646. On 4-29-08 BPH & CDCR proceeded to have a Parole Revocation Hearing in regards to the controlling case number. objections were made in regards to numerous legal violations. The results being; one charge dismissed, and allegedly good cause on the remaining two. I the Petitioner believe that that the whole revocation process was in violation of my Due Process, constitutional Rights. Due to the Extraordinary circumstances involved in my controlling case/Docket Petition. On 4-30-08 Petitioner met with Attorney of record Mark Demming, via contact visit, Following the 4-29-08 Revocation hearing. On this meeting day Attorney of Record, for the first time signed an agreement with petitioner for retaining him officially as assisted counsil for Appellate Representation. Along with signing another document giving him permission to request the tape recordings from the 4-29-08 revocation hearing. I also requested that he seek to recieve a copy of my Petition that was filed in Alameda County Superior Court on 4-24-08. He assured me that this would be no problem. However I have yet to see him produce either. Instead Mark Demming took it upon himselfe to Draft a request of Decision Review to a said AFDC. Rhonda Skipper-Dotta on my account allegedly without my permission on May 7, 2008, and submit it to the mysterious addressee. I wasn't aware of him drafting this document, I would've requested to evaluate the legal binding verabage of this document and all of it's contents prior to his submission. Keeping in mind that we had agreed to the next step only being the filing of a Post hearing revocation hearing writ of Habeas Corpus. And in doing so we must be legally concious of the fact that such a document can and will be used against me in court. As evidential legal facts and statements. Rather they be informal or formal reviews. A evidentiary hearing would also allow this Memorandum of his to be produced and relied upon as evidence against me. I only became aware of his draft that was submitted after May 7th 2008 the day he submitted it. When I questioned him about the plan for Post Hearing Writ, that he agreed to assist me in petitioning to the court. He nolonger had interest in doing so. However he did provide a Writ of Habeas Corpus Self help packet, along with two large envelopes and manila folders to me on 4-30-08. When asked why, he stated "In case they should move you to prison you could file one when your there". On May 8th 2008, when he brought me two copies of his drafted memorandum signed and dated, I brought to his attention the paramount concern of my PETITION'S, that have been filed already as well; the apparent conflict of interest his preemptive actions now posed. Especially to my pending Court review. Mr. Demming has neglected to disclose all the facts in his Draft. I feel that he has in fact twisted the liability of my unlawful arrest to assist those who were and are responsible. Enclosed in this PETITION is an Amended MITIGATION OF CONTENTION To The POST Revocation Hearing of 4-29-08. Facts that I would like to ensure are pointed out as being un-ethically left out. But not limited to this PETITION, Reserving my Federal § state appellate issues, rights, and or future statements that can be produced to the court as factual at evidentiary hearings.

A copy of this PETITIONS CONTENTIONS and STATEMENT OF FACTS will also be submitted along with a copy of his drafted un-ethical Memorandum To The BAR ASSOCIATION of the State of California, for further evaluation and ETHICAL REVIEW...

ON THIS 13th DAY of MAY, 2008. In Dublin, California.

CDC # P07071
PFN # AYG-552

First, Petitioner contests the authority of BPH & CDCR to have a _____ _____ by me used; un-ethical charges were unlawfully pursued AS well my controlling case number was already bin sed; un-ethical charges were unlawfully pursued AS well my controlling case was raised and acknowledged by the Deputy back in Superior Court as a Docket # H25646. This fact was raised and acknowledged by the Deputy Commissioner on 4-28-08, on the record at the beginning of the hearing while my rights were in question. Secondly Petitioner was informed that "The only way to Appeal a decision of today's hearing is by what is called a Writ." "No longer by 602 inmate appeals process!" "I's spelled W,R,I,T," Deputy Commissioner never once mentioned an option for Decision Review by a so-called A.C.D.C. Rhonda Skipper-Dotta. Petitioner would like to question the legal authority and abbreviated meaning of this reviewing Panel or option being described in the memorandum as the recipient of Mark Demmings addressee.

(Page 1) 1st paragraph (M.D.) Claims that I Robert Alexander is in fact making this request for the Board's informal review. That "The Parolee believes that the Panel made clear errors of law in these findings! When in fact I am waiting on the Attorney General to Submit a informal Briefing to the Court on May 6th 2008. I never gave M.D. the permission to and Served by the Superior Court on May 6th 2008. I never gave M.D. the permission to Draft and Submit this document to a party whom I have no knowledge of, out of court for a review without my Permission and review prior to evaluation of it's legal binding Contents. On this page M.D. failed to mention the facts in whole, he neglected the Ethical Duty to Report & address the Peace officer misconduct, P.O's report, and the documented Revocation hearing tape recorded Formal complaint of witness tampering by the San Leandro Region II OAPO & Pleasanton Police Dept. (M.D.) Failed to mention the fact that the Parole Agency's limited authority in regards to Special conditions, and the provision not to be preemptive. Also he failed to include my argument that Pleasanton P.O. testified on 4-28-08 that they followed protocol of forwarding their reports "naratives" to San Leandro Region II OAPO when they were made. OAPO claims they were never sent to them prior to 4-5-08. The Second charge for Spousal battery being "allegedly 6 months old. Pleasanton P.O. didn't follow the procedures described by California Domestic Violence law, in which they are to make a report & take a Statement, available as well as injury report should be noted and photographed. (If) they ever were to have responded to the allegations in question.

(Page 2) Top of the page in the first paragraph (M.D.) failed to mention the fact that Pleasanton Police officers testimony didn't collaborate with his false injury report & fraudulent un-signed witness Statements Submitted in his report. EPD. Claimed a 3" gash across the forehead, in his report. Revocation hearing proved on record that wasn't in fact the truth. Also in regards to this Factual background. Agent of Record was noted twice on record that she had an argumentive/unprofessional communication problem with my wife and my mother had to make numerous Complaints to the OAPO Ass. Supervisor. Page 2, 3rd paragraph (M.D.) Verbage States that Agent Snyder "found" police reports rather than Say the fact that She had already had police reports from Dec. 11th 2007, also the fact that the report date 12-11-07 was the same very day that I was violated for and arrested by the Pleasanton Police Dept. for absconding. Yet I wasn't ever charged for a battery on this day.

(Page 2) 4th paragraph (M.D.) Fails to mention the fact that a Pleasanton P.D. Narative Report, not having a written, Signed, or recorded Statement from my wife. Also that my wife testified that the incident never happened. Nor did She ever call the Pleasanton P.D. on the day of question. The Last paragraph (M.D.) Fails to mention that both Pleasanton P.D. report had no written, verbal, or Signed, or Sworn Statement, just their "naratives" again. Most importantly on 4-28-08 at the Revocation Hearing the Notorized letter Submitted & and entered into evidence from State witness. ASKED D.C. to make a Formal complaint on record in regards to OAPO harrassing, trying to ask State witness to co-conspire with OAPO to Falsify documents and falsly accuse me of a charge that I didn't do. In attempts to ensure I have a revoking of Parole. Further expressing anger and confession towards Agent Jovic Snyder. Not Sevon A tias.

(Page 3) Procedural Background And Revocation hearing. (M.D.) Failed to mention that it was noted on record; In fact he objected to the fact that D.C. James Martin made his findings for cause in the very middle of the hearing; not the end. (Page 3) Arguments failed to conclude the fact that Parole Authority was preemptive and exceeded their Authority when they unlawfully & fraudulently Amended my Parole five document 8 CDC 1502 B's. Further that BPH & CDCR is only authorized to implement a Special condition of parole.

(Pages 4-6) M.D. Fails to include a primary factor that my wife not fiance whom I lived with for two years did not in fact have a tumultuous relation ship. No the fact the Agent of record wasn't present for cross examination. Or the fact that San Leandro Region II OAPO were wrong in forcing on a parolee, under duress, threat of Jail, in hand cuffs, a Special condition without legal representation. When the Signing of the document would in fact put me in immediate Violation & legal bind. Due to my wife being present at the Parole office with me, and lives with me.

Nor Does He mention that the arrest was un law ful!

## MOTION FOR RELEASE

Petitioner is without remedy save by writ of habeas corpus.
WHEREFORE, petitioner prays the Court:

1) issue a writ of habeas corpus;
2) declare the rights of the parties;
3) reverse the good cause finding of the revocation hearing;
4) restore my parole;
5) expunge all "references to the charges from my central parole file;
6) appoint adequate counsel award reasonable attorney fees; and
7) grant any other and further relief the Court deems proper.

Dated: 5-13-08                        Respectfully Submitted,

Robert J. Alexander

## VERIFICATION

I, ROBERT J. ALEXANDER, State:

I am the petitioner in this action. I have read the foregoing petition for writ of habeas corpus and the facts stated therein are true of my own knowledge, except as to matters that are therein stated on my own information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Dublin California o May 13th 2008.

CDC# P07071

Mark Demming (SBN 226831)
Law Office of Mark Demming
5414 Miles Avenue
Oakland, CA 94618
Tel/Fax: (510) 655-7690
markdemm@yahoo.com

Attorney for Parolee ROBERT ALEXANDER, P-07071

# MEMORANDUM

To:     A.C.D.C. Rhonda Skipper-Dotta

Re:     Request for Decision Review in case of April 29, 2008 Revocation Hearing for Robert
Alexander

Date:   May 7, 2008


Dear A.C.D.C. Skipper-Dotta:

With this memorandum the parolee Robert Alexander, referenced above, requests the
Board's informal review of good cause findings in two parole violation charges brought against
him and heard at a revocation hearing at Santa Rita Jail on April 29, 2008. The parolee believes
that the panel made clear errors of law in these findings.

The first of the charges in question is refusal to sign parole conditions. Here, the panel,
constituted by D.C. James Martin, did not correctly apply the *Lent* test in determining that a new
special condition of no contact with his fiancee was valid. In particular, parolee had no previous
conviction, or even findings of good cause in parole proceedings, related to domestic violence,
nor was there evidence that forbidding contact was reasonably related to potential future
domestic violence on the part of the parolee. The second charge was battery on spouse. Here, the
good cause finding was based on an out-of-court statement to police for which there was no
independent corroborating evidence. Additionally, the statement was recanted by the
complaining witness Sevon Atias under oath at the hearing. Having found good cause on the two
charges, the D.C. returned Mr. Alexander to custody for 11 months (ineligible for credits due to
commitment offense).

## FACTUAL BACKGROUND

On March 21, 2008, D.C. D. Star presided at a hearing for Mr. Alexander on charges –
based on statements by the parolee's girlfriend, Sevon Atias, to police and the parole agent of
record – of robbery and battery on spouse. The arrest and parole hold date for the charges was
Feb. 16, 2008. D.C. Star dismissed both charges at the conclusion of the hearing. She wrote in
"Reason for Decision" on the 1103-REV that "victim today testified she lied as mad over

restraining order ... collaborated with girlfriend to filing false police report ... parolee, attorney and victim presented testimony of prior incidents involving victim, questioning her credibility and leading to parolee having a peaceful contact restraining order on victim ... there is no independent corroboration of victim's original statement and victim original statement in serious question given several credibility, bias, and alternative motivations issues present today as well as her recanting ..." D.C. Star also lectured Ms. Atias about the gravity of making false allegations to the police.

The parole hold was lifted and Mr. Alexander was released. Immediately following the hearing, on March 21, 2008, without notification to D.C. Star or the parolee (who was first notified when he reported to the parole office on March 24), Agent J. Snyder imposed a special condition that parolee have no contact with Ms. Atias, who at the time was five or six months pregnant with their child. Agent Snyder was not present at the parole office on March 24, and the parolee talked with Unit Supervisor Bent who, upon seeing that there was no restraining order from the court forbidding contact, but only an order restraining Ms. Atias from harassment of Mr. Alexander, allowed Mr. Alexander to sign the old conditions and leave the office, pending further consultation with AOR Snyder. When the parolee returned a few days later, Agent Snyder insisted that he sign the no-contact condition or be arrested. Mr. Alexander refused and insisted on seeing the Unit Supervisor Bent who had earlier reviewed the proposed new condition. Mr. Alexander testified at the hearing that if he had been allowed to speak with U.S. Bent, and if Bent had confirmed that the Parole Office was now standing behind Agent Snyder's imposition of the special condition, he would have signed on that day at the office pending an appeal of the validity of the condition. Instead, he was not permitted to speak with Mr. Bent and was taken into custody immediately thereafter.

Agent Snyder then found police reports from December 11, 2007 (for an allegation made by Sevon Atias) and February 7, 2008 (for an allegation made by Sevon Atias of a Feb. 5 residential burglary), and added the charges to the charge of refusal to sign on the Form CDC 1676. Both charges based on old police reports dated from before Mr. Alexander's arrest on the charges heard by D.C. Star on March 21, 2008.

According to the Pleasanton Police Department report of Dec. 11, 2007, Sevias told the officer that after an argument that morning, the parolee returned to their apartment, kicked her once in the left leg just above the knee as she was about to shower, and then left. "The area she was pointing to was covered by a tattoo and I could not see any injuries. Atias stated she did not need any medical attention at that time," wrote the officer. At the April 29 hearing conducted by D.C. Martin, the officer repeated the statement in the report that he could see no injury on the leg.

According to the Pleasanton Police Department report of Feb. 7, 2008, the front door of a Rachel Smith had been damaged and repaired, and some perfume was missing off her dresser. Smith called Sevon Atias, who had been staying with her the previous days. Ms. Atias told Smith that Robert Alexander had kicked the door in. A police officer then questioned Ms. Atias directly, and she gave the officer told a similar story. At the April 29 hearing, a notarized letter by Rachel Smith was entered into evidence stating that she (Smith) found who had broken in and stolen some things, that it was not Mr. Alexander, that she had reported her discovery and the

2

falsity of the original report to the police, and that she did not know why Sevon Atias had falsely accused him but that it upset her the Ms. Atias had done so.

II.
PROCEDURAL BACKGROUND AND REVOCATION HEARING

Mr. Alexander was taken into custody at the parole office on March 26, 2008, barely 5 days after his release on the dismissed charges on which he had been held since Feb. 5, 2008. He remained in custody until a new revocation hearing could be held on April 29, 2008.

At the beginning of the revocation hearing, counsel for parolee requested that the panel first determine whether the special condition Mr. Alexander was accused of refusing to sign was valid based on the *Lent* test (*People v. Lent* (1975) 15 Cal.3d 228, incorporated in DOM, sec. 81010.16.) D.C. Martin heard arguments but did not give a decision on this issue until the end of hearing, when he found that the parolee had failed to sign a valid special condition of parole.

D.C. Martin found good cause on the charges of refusal to sign the new parole condition and spousal battery, dismissed the charge of residential burglary, and returned Mr. Alexander to custody for 11 months.

III.
ARGUMENT

A. THE SPECIAL CONDITION OF NO CONTACT WITH SEVON ATIAS WAS INVALID BECAUSE IT WAS NOT REASONABLY RELATED TO POTENTIAL FUTURE CRIMINALITY, AND THE GOOD CAUSE FINDING OF REFUSAL TO SIGN SHOULD THEREFORE BE DISMISSED.

A condition of parole "will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality ....' (*Citation.*) Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." *(People v. Lent, supra*, 15 Cal.3d at 486.)

The *Lent* test is explicitly incorporated into the DOM (Sec. 81010.16): "Any other restriction or instruction may be imposed as a special condition if warranted by the circumstances of the case. The behavior to be controlled must be sufficiently documented in the parolee's file to support imposition of a special condition.
"A special condition of parole shall be imposed only if the condition is:
*      Related to the crime for which the prisoner was convicted.
*      Related to conduct that is not in itself criminal, but is reasonably related to potential future criminal behavior."

3

Even when the purpose of the condition is to prevent future criminality, it must relate to the *parolee's* criminal conduct. ("Parole Hearings," Ch.47, CEB California Criminal Law, Procedure and Practice, 2007, p. 1499.)

Further, because a parolee has a right to liberty that "includes many of the core values of unqualified liberty" (*Morissey v. Brewer* (1972) 408 US 471, 482), a parole condition restricting the exercise of certain fundamental rights is allowed by the courts only to the extent actually required by the legitimate demands of the parole process (*People v. Burgener* (1986) 41 Cal.3d 505, 530). A parole condition must be reasonable (*Burgener,* 41 Cal.3d at 532). If the special condition impinges on a constitutional right such as freedom of speech, association, or travel, the condition must be reasonable and narrowly drawn. *People v. Keller* (1979) 76 Cal.App.3d 827, 838. See also *In re White* (1979) 97 Cal.App.3d 141, 146. (Offenders convicted of a domestic violence offense (Fam C §6211) involving threatening, stalking, sexually abusing, harassing, or violent acts may be subject to no-contact orders. PC 3053.2.)

Here, the condition of no contact with a fiancee and future mother of one's child is certainly a restriction of a fundamental right. Cases such as *In re White* (cited above) suggest that a no-contact order is narrowly drawn for legitimate demands of parole in cases where a parolee has been convicted of a domestic violence offense. In any case, evidence of the kind criminal behavior to be protected against must certainly be held to be a pre-condition for the imposition of this special condition. Here, there was no such finding at all.

One of the due process rights of parolees established by *Morrissey v. Brewer, supra,* 408 U.S. at 487, is "a written statement by the fact finders as to the evidence relied on and reason for revoking parole." In his statement on BPH 1103-REV, D.C. Martin based his finding not on a showing of a reasonable relationship to future criminality, as required by *Lent* and related case law as well as the DOM, but on a showing merely on a "tumultuous" nature to the private relationship of the parolee and his fiancee. The entirety of the D.C.'s statement of the evidence and reason for upholding the no-contact condition was: "In a separate hearing, it was found that there was a nexus between the proposed SCOP [special condition of parole] and parolee's past behavior, including a tumultuous relationship with Sevon Atias." The D.C. makes no finding that the unspecified "past behavior" had anything to do with domestic violence. The quoted statement was indeed all that there was to take from the hearing, and it is clearly insufficient to meet the validity requirement that the special condition be reasonably related to potential future criminal behavior.

While Mr. Alexander and Ms. Atias have a relationship that at times could be described as "tumultuous," there was no evidence that physical violence (or other criminal behavior constituting domestic violence) was ever involved. Ms. Atias testified that the parolee had never hit her, and testified that she had made false statements in the past when she was angry at Mr. Alexander. There have never been witnesses or other independent corroboration to the contrary. Ms. Atias' pattern, in the course of a few months, of false allegations to the police as a way of dealing with conflict in the relationship – hopefully now a thing of the past – should not result in Parole's further punishment of Mr. Alexander by a no-contact special condition. Since by all evidence the relationship has been non-violent, there can be no reasonable relation between a no-contact condition and potential future domestic violence on Mr. Alexander's part. There are no

legitimate demands of parole for the state to interfere with the parolee's right to associate with Ms. Atias and pursue (or freely decide not to) family life with her, or to have freedom to love and care for his soon-to-be-born child. The sanction for this unwarranted state interference in private life is extreme: Any contact between Mr. Alexander and Ms. Atias not authorized by the state would result, if the punishment guidelines were followed, in 10 to 12 months of custody for Mr. Alexander. The state is overreaching, and applying its power arbitrarily, to attempt to do this in the name of several months of (non-violent, non-criminal) "tumultuousness" in a relationship.

The law on the imposition of special conditions was not followed by the April 29 panel in making his finding, and the good cause finding for refusal to sign the new condition of parole should be dismissed in the interests of justice.

B. THE PANEL ABUSED ITS DISCRETION WHEN IT RELIED FOR ITS GOOD CAUSE FINDING FOR SPOUSAL BATTERY ON THE COMPLAINING WITNESS' UNSWORN, VERBAL OUT-OF-COURT STATEMENT, UNCORROBORATED BY INDEPENDENT EVIDENCE, AND CONTRADICTED BY HER SWORN AT THE HEARING. THIS FINDING SHOULD BE REVERSED AND THE CHARGE DISMISSED.

The issue of law here is not exactly one of the right to confront, as addressed by *U.S. v. Comito* and related cases. In this case, Sevon Atias, the alleged victim who contacted police with the allegation of a battery by Mr. Alexander, appeared at the hearing and answered questions. She testified that she did not remember calling the police in December 2007, but in any case Mr. Alexander did not kick her in the leg, and in fact has never hit or kicked her. Since she did not remember the occasion of calling and then talking in person with the police in mid-December, 2007, she did not remember what might have been her motive for calling the police. (Ms. Atias' testimony in cross-examination by the parole agent was somewhat confused and contradictory, in that she denied calling the police, but then later agreed that she simply did not remember calling them.)

Previous occasions of calling the police with false reports, including for the charges that were heard and dismissed at the previous revocation hearing of March 21, 2008, before D.C. Star, were introduced by her testimony.

The Pleasanton police officer who responded to Ms. Atias's call on Dec. 11, 2007, testified in accordance his report written at the time: that Ms. Atias told him that Robert Alexander kicked her in the leg after an argument, and then left. He looked at the spot she indicated above the knee, but it was covered by a tattoo and he could see no evidence of injury. She did not allow the officers into the apartment, did not want medical treatment, and did not want to take any further action.

The state presented no independent evidence that would tend to corroborate Ms. Atias' story.

All the right to confront cases require independent corroborating evidence for the admissibility, for purposes of a good cause finding, of hearsay statements. (See, for example, *In*

5

*re Miller* (2007) 145 Cal.App.4th 1228.) Here, there was no corroborating evidence. The sworn testimony of Ms. Atias at the hearing was clear and unshaken that Mr. Alexander had never struck her. Even if a D.C. were to find that Ms. Atias was not a credible witness, that would not permit the discretion, absent any other evidence, to arbitrarily decide that Ms. Atias's sworn testimony at the hearing was untrue and her out-of-court statements to a police officer, in contrast, were truthful.

On the BPH 1103-REV, D.C. Martin wrote as reason for decision of this charge: "Based on testimony of [Pleasanton Police Dept.] Officer Greenwood that he responded to a report by Sevon Atias that parolee had kicked her on 12-11-07. While the victim came to the hearing and recanted, claiming that she could not remember much of anything, that witness showed very little credibility and reasons for bias. The investigation of Officer Greenwood has high credibility and it is supported by several events of conflict and allegations between the parties."

The credibility of Officer Greenwood in faithfully reporting what Ms. Atias had told him has nothing to do with it. Her statement to the officer simply cannot be used as the basis of a good cause finding absent independent corroboration. The unspecified "events of conflict and allegations between the parties" do not constitute independent corroborating evidence that Mr. Alexander kicked Ms. Atias. Therefore, by the law of hearsay as applied to parole revocation proceedings, the finding must be reversed and the charge dismissed.

IV.

CONCLUSION

For all the reasons above and in the interests of justice, parolee urges the Board to dismiss the charges of refusal to sign a special condition and battery on a spouse, and lift the parole hold on Mr. Alexander.

Dated: May 7, 2008

Mark Demming
Attorney for RICHARD ALEXANDER

6

```
LEGAL STATUS SUMMARY  TYPE-   D     CTF-N                    07/29/2003 21:48

   CDC NUMBER  |  NAME                          |ETHNIC|    BIRTHDATE
    P07071     |  ALEXANDER,ROBERT              | BLA  |   03/29/1978

   TERM STARTS |  MAX REL DATE   MIN REL DATE  MAX ADJ REL DT |  MIN ADJ REL DT
    08/10/1998 |   09/17/2006    12/27/2005     09/17/2006    |   12/27/2005
                                                              |  PAROLE PERIOD
  BASE TERM  6/00 + ENHCMNTS   3/00 = TOT TERM  9/00          |  3 YRS


  PRE-PRISON + POST SENTENCE CREDITS
  CASE    P2900-5 P1203-3 P2900-1 CRC-CRED MH-CRED P4019   P2931 POST-SENT  TOT
  H25646    240                                      36              44    320

  PC296 DNA REQUIRED AND HAS NOT BEEN COLLECTED
  NOTIFICATION REQUIRED PER PC3058.6


  RECV DT/ COUNTY/   CASE    SENTENCE DATE              CREDIT      OFFENSE
   CNT      OFF-CODE  DESCRIPTION                       CODE         DATE

  CONTROLLING PRINCIPAL & CONSECUTIVE   (INCLUDES ENHANCEMENTS/OFFENSES):

  --CONTROLLING CASE --
   8/10/1998  ALA   H25646     6/26/1998
     01 P245(B)    ASLT W/SEMIAUTO FIREARM                  4    10/30/1997
                    (DWPN
                   P12022.7(A)   01 INFL GBI               4
        PC 2933.1


  TRAN                              RULE      ____D A Y S____
  TYPE    DATE    END DATE LOG NUMBER  NUMBER  ASSESS LOST REST DEAD

  BEG 08/10/1998           ******BEG BAL*******
  BCL 04/06/2001           I0104026  3005B      30   30
  ADD 08/10/1998           H25646
  BCR 08/23/2001           I0104026  3005B                30
  BCL 07/11/2001           I0107014  3021       60   60
  ADD 08/10/1998           H25646
  BCL 12/20/2001           I0112047  3005B      30   30
  ADD 08/10/1998           H25646
  BCR 05/15/2002           I0112047  3005B                36
  ADD 08/10/1998           H25646
  BCL 07/11/2003           V0703030  3016(A)   120  120
  ADD 08/10/1998           H25646
       CURRENT PC BALANCE:    0            CURRENT BC BALANCE:    264
```

## Mark Demming, Attorney at Law

5414 Miles Avenue
Oakland, CA 94618
Telephone/fax: (510) 655-7690

## AUTHORIZATION FOR RELEASE OF

## CONFIDENTIAL INFORMATION AND RECORDS

I, ROBERT ALEXANDER, d.o.b. March 29, 1978, by this release or a photocopy thereof, authorize and request you to release to attorney Mark Demming, or his designated representative, any and all information and/or records relating to me, including (but not limited to) academic, law enforcement (including, but not limited to, arrest, complaints, and accident reports), medical (including prison medical), correctional, drug and alcohol rehabilitation, employment, unemployment, social security and earnings information, military, probation, court and appellate records and filings, and parole records, as well as any files prepared in connection with prior civil or criminal litigation, and any other correspondence or documents pertaining to me.

This document also authorizes any treating doctors, experts, or other personnel to discuss their otherwise confidential information with the above-mentioned legal representative. In consideration of such disclosure, I hereby release you (in your individual and/or institutional capacity) from any and all liability arising from the disclosure of otherwise confidential information. You are specifically authorized to photocopy these records and to release copies to the above-mentioned legal representative.

Although I may revoke this authorization at any time, it is otherwise valid for one year from the date below.

Signed _____

Dated: _5-1-04_ _____

# THE STATE BAR OF CALIFORNIA

State Bar Home

## ATTORNEY SEARCH

## John Leonard Burris - #69888

### Current Status: Active

This member is active and may practice law in California.

See below for more details.

### Profile Information

| | | | |
|---|---|---|---|
| **Bar Number** | 69888 | | |
| **Address** | 7677 Oakport St #1120<br>Oakland, CA, 94621 | **Phone Number** | (510) 839-5200 |
| | | **Fax Number** | (510) 839-3882 |
| | | **e-mail** | john.burris@johnburrislaw.com |
| **District** | District 3 | **Undergraduate School** | Golden Gate Univ; San Francisco CA |
| **County** | Alameda | **Law School** | UC Berkeley SOL Boalt Hall; Berkeley CA |
| **Sections** | None | | |

### Status History

| Effective Date | Status Change |
|---|---|
| *Present* | Active |
| 10/21/1996 | Active |
| 9/21/1996 | Not Eligible To Practice Law |
| 11/12/1976 | Admitted to The State Bar of California |

Explanation of member status

### Actions Affecting Eligibility to Practice Law

| Effective Date | Description | Case Number | Resulting Status |
|---|---|---|---|
| **Disciplinary and Related Actions** | | | |
| 9/21/1996 | Discipline w/actual suspension | 92-O-18757 | Not Eligible To Practice Law |

**Administrative Actions**
This member has no public record of administrative actions.

Copies of official attorney discipline records are available upon request.

Explanation of common actions

Start New Search >

**Contact Us**    **Site Map**    **Privacy Policy**    **Notices**    © 2008 The State Bar of California



United States District Court
for the Northern District of California
450 Golden Gate Avenue, Box 36060
San Francisco, CA 94102-3483